**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

In the Matter of:

PATIO MARKET, INC,                          Case No. 17-52595-tjt
                                            Chapter 11
         Debtor.                     Hon. THOMAS J. TUCKER
_____/

**FIRST AMENDED**
**DEBTOR'S COMBINED DISCLOSURE STATEMENT AND**
**PLAN OF REORGANIZATION**

**IMPORTANT! THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION. PLEASE READ THIS DOCUMENT WITH CARE.**

Prepared By:
Robert N. Bassel  (P 48420)
Attorneys for Debtor
P.O. Box T
Clinton, MI 49236
(248) 677-1234

# I. PLAN OF REORGANIZATION

Debtor propose(s) the following Plan(s) of Reorganization (the "Plan") pursuant to §§1121 and 1123 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

As used in this Plan, the following terms shall have the meanings specified below, unless the context requires otherwise:

1.1 **"Administrative Claim"** means costs and expenses of administration of the relevant Chapter 11 case allowed under §§503(b) and 507(a) of the Bankruptcy Code and the fees of the United States Trustee under 28 U.S.C. §1430(a)(6).

1.2 **"Administrative Creditor"** shall mean any Creditor who asserts an Administrative Claim.

1.3 **"Allowed Claim"** or **"Allowed Interest"** means a Claim against or Interest in The Debtor to the extent that:

    A.    A Proof of Claim or Interest was:

        1.    Timely filed;

        2.    Deemed filed pursuant to §1111(a) of the Code; or

        3.    Filed late with leave of the Bankruptcy Court after notice and an opportunity for hearing given to Debtor, and counsel for Debtor; and

    B.    The Claim is not a Contested Claim or a Contested Interest, or

    C.    The Claim is allowed (and only to the extent allowed) by a Final Order of the Bankruptcy Court.

1.4 **"Avoidance Actions"** means all claims granted the debtor-in-possession or a trustee under §§ 544-553 of the Code.

1.5.    **"Ballot"** shall mean the official Bankruptcy Form or a document prepared to substantially conform to same being sent to all creditors and parties-in-interest entitled to vote for or against the Plan.

1.6    **"Bankruptcy Code"** or **"Code"** means the Bankruptcy Reform Act of 1978, as amended (11 U.S.C. §§101, et seq.), also known as the United States Bankruptcy Code.

1.7    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and any court having jurisdiction over any appeals.

1.8    **"Bankruptcy Rules"** or **"Rules"** means the Federal Rules of Bankruptcy Procedure, and any amendments thereto.  To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

1.9    **"Business Day"** means any day, other than a Saturday, Sunday or "Legal Holiday," as that term is defined in Bankruptcy Rule 9006(a).

1.10    **"Case"** means the relevant above-captioned case currently pending before the Bankruptcy Court.

1.11    **"Claim"** means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.12    **"Class"** means a class of holders of Claims or Interests described in Article III of this Plan.

1.13    **"Confirmation Date"** means the date upon which the Bankruptcy Court shall enter the Confirmation Order in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.14 **"Confirmation Hearing"** means the hearing conducted by the Bankruptcy Court to consider the confirmation of the Plan filed by Proponent.

1.15 **"Confirmation Order"** means the order entered confirming this Plan by the Bankruptcy Court pursuant to §1129 of the Code.

1.16 **"Contested Claim"** means any Claim as to which The Debtor or any other party in interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules and this Plan, which objection has not been determined by a Final Order.

1.17 **"Creditor"** means any holder of a Claim against The Debtor.

1.18 **"Debtor"** means the relevant above-captioned chapter 11 debtor.

1.19 **"Effective Date"** means the 11th calendar day after the Confirmation Order becomes a Final Order.

1.20 **"Final Order"** means an Order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken; or (ii) any timely appeal has been finally determined or dismissed.

1.21 **"Impaired"** means a Claim treated under this Plan, unless the Plan:

(a) leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or

(b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default—

(1) cures any such default (other than defaults relating to (i) any penalty interest rate or provision arising from a non-monetary default by the Debtor; (ii) the solvency or financial condition of the Debtor or (iii) the commencement of this Case) that occurred before or after the commencement of the Case;

(2)     reinstates the maturity of such Claim or Interest as such maturity existed before such default;

(3)     compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(4)     does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles its holder.

1.22    **"Insider"** shall mean a current or former director, shareholder, officer, partner, person in control, relative of a director, officer, partner or person in control of The Debtor or a corporation or entity in which an Insider (as defined above) of the Debtor is an Insider.

1.22.1 "**Interest Holder"** means the stockholders of The Debtor as of the Petition Date.

1.23    **"Interest"** means an equity interest in The Debtor as defined in §101 of the Code.

1.24    **"Interest Rate"** means, unless specified, (a) with respect to Claims entitled to interest under §506 of the Bankruptcy Code and this Plan and having an applicable contractual rate of interest, the lowest rate of interest provided in such contract, without regard to any default by Debtor, (b) with respect to all other Claims entitled to interest under the Bankruptcy Code and this Plan, 5% per annum, or (c) with respect to (a) or (b) such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.25    **"IRS"** means the Internal Revenue Service, an agency of the United States of America, and its representatives, affiliated agencies and assignees.

1.26    **"Lien"** means a charge against, or an interest in property to secure payment of a debt or performance of an obligation.

1.27     **"New Value"** means such money or money's worth that has been paid or contributed by the Interest Holders for the new stock of the reorganized debtor.

1.28 **"Petition Date"** means the date Debtor filed the Voluntary Petition commencing the Case under Chapter 11 of the Bankruptcy Code.

1.29 **"Plan"** means this Plan of Reorganization, as it may be altered, amended or modified from time to time.

1.30 **"Priority Claim"** means a Claim under or entitled to priority under Code §507(a) of the Code.

1.31 **"Priority Creditor"** means a Creditor who asserts a Priority Claim.

1.32 **"Professional Fees"** means the fees and reimbursement for disbursements owed to attorneys, accountants, or other professionals whose employment has been approved by the Bankruptcy Court.

1.33 **"Reorganized Debtor"** shall mean The Debtor, on and after the Effective Date.

1.34 **"Secured Claim"** means a Claim secured by a Lien on property in which the estate has an interest but only to the extent of the value of the Creditor's interest in the estate's interest in the property as of the Petition Date.

1.35 **"State of Michigan"** means the Michigan Department of Treasury, Michigan Unemployment Agency or any other governmental agencies of the State of Michigan.

1.36 **"Unsecured Claim"** means a Claim that is not a Secured Claim, an Administrative Claim nor a Priority Claim.

1.37 **"Unsecured Creditor"** shall mean any Creditor that holds an Unsecured Claim.

**ARTICLE II**

**TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION
OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN**

For the purposes of approval and implementation of this Plan and the resultant reorganization of the Debtor, Administrative Creditors and Priority Creditors shall be paid on account of their respective Administrative and Priority Claims in accordance with the provisions set forth below:

2.1     **GROUP I**.  The Claims of Group I shall consist of all Administrative Expenses, except the claims of taxing authorities that are secured and that qualify as Administrative Expenses. The Allowed Claims of this Group shall be paid the full amount of their Claims on such date as may be mutually agreed upon between Debtor and the particular claimant, or, if no such date is agreed upon, the latest of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between Debtor and such Administrative Creditor, or (iii) the date on which the Bankruptcy Court enters its order, if necessary, approving Debtor's payment of such expenses.  It is estimated that the only entity in this class shall be Robert Bassel, attorney for the Debtor.  It is estimated that the amount of his administrative expense shall be approximately $5,000.

2.2     **GROUP II**.  The Claims of Group II shall consist of all Priority Creditors entitled to receive priority for their Allowed Claim under §507(a)(8) of the Bankruptcy Code.  Debtor believes that it owes $200,000 to the State of Michigan, and proposes to pay it over 96 months at 3.5% interest with monthly payments of $1793.71, commencing on the Effective Date.

2.3     **GROUP III**.  The Claims of Group III shall consist of all other Priority Creditors entitled to receive priority for their Allowed Claim under §507(a) of the Bankruptcy Code other than §507(a)(8).  Debtor does not believe that any such claimants exist. If they do exist, they shall be paid in equal monthly payments over 96 months from the Effective Date at 3.5% interest per annum.

# ARTICLE III

## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER PLAN AND THOSE IMPAIRED UNDER THE PLAN

The Plan divides Claims and Interests into classes and treats them as follows, all of which are impaired unless noted:

| Debtor | Claimant | Treatment for Claims in this class |
|--------|----------|-------------------------------------|
| | | |
| Class 1 | Chemical Bank | This class is made of Chemical Bank's secured claim in the amount of $247,500 [utilizing collateral value of $250,000 less tax lien of $2,500]. The collateral is the property located at 32240 W. Jefferson, Rockwood, MI 48173. Payments shall be amortized at 5% interest over 200 monthly payments of $1,826.36, with a balloon payment of the remaining balance on the 60th month. Bank shall retain its lien until its secured claim is paid in full. The rest of its total claim of approximately $131,500 shall be treated as an unsecured claim. Payments shall start on the Effective Date. Bank has a second priority lien as to the real property located at 32240 W. Jefferson Rockwood, MI 48173, subordinate to the real property tax lien for the Wayne County Treasurer.<br><br>This class is impaired. |
| Class 2 | General Unsecured Claims | This class, which appears to be made up of the deficiency claim of Chemical Bank in the approximate amount of $131,500 shall be treated as a general unsecured claim, and paid at 10% in 240 equal monthly installments, commencing on the Effective Date, without interest.<br><br>The monthly plan payment for this class shall be $54.71 per month until the claims in this class are paid in full.<br><br>This class is impaired. |
| Class 3 | Class of Equity Security Holders | See below |

| Class 4 | Wayne County /Charter Township of Brownstown | The claimants in this class, with respect to the unpaid real property tax in the amount of $2,500, which is a secured claim, shall be paid its claim over 5 monthly installments at 12% interest. |
|---|---|---|
| | | The collateral is the property located at 32240 W. Jefferson, Rockwood, MI 48173. Wayne County/Brownstown has first priority, and Chemical Bank has second priority. |
| | | The monthly payment for this class shall be $515.10 per month until the claims in this class are paid in full. |
| | | Upon the failure of the Debtors to make any payment due on a Secured or Priority Claim to the Treasurer, which is not cured within 30 days of the mailing of the written notice of default by the Treasurer, the Treasurer may exercise all rights and remedies applicable under non-bankruptcy law for the collection of its entire claim without seeking relief from this Court. Claimants in this class shall retain their lien until the claims in this class are paid in full. |
| | | Payments shall start on the Effective Date. |
| | | This class is impaired. |
| Class 5 | Roy Livengood | The claimants in this class, with respect to the purchase money security interest in the coolers, cameras, and shelving, in the amount of $4,452.00, which is a secured claim, shall be paid over 24 monthly installments of $100 per month with no interest. The value of this collateral is approximately $4,452. Claimants in this class shall retain their lien until the claims in this class are paid in full. Claimant shall receive a balloon payment on 25th month. Payments shall start on the Effective Date. |
| | | This class is impaired. |
| | | |

The claims and interests of the equity holder(s) shall be treated in one of two alternative methods, to the extent applicable:

A. If all impaired classes of Creditors vote to accept the Plan, then the rights of the Interest Holders shall remain the same. **This Class shall not be Impaired.**

B. If any class of Creditors vote to reject the Plan or if the Bankruptcy Court requires, for any reason, that New Value be provided to the Debtor, the Interests of the Debtor shall be canceled and new Interests shall be reissued to the Interest Holders upon the investment by the Interest Holders of New Value, or those purchasing the Debtor's equity in the auction contemplated by this Plan. **This Class shall be Impaired**.

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1 **Funding of the Plan:** Debtor reasonably believes that its future operations will generate sufficient funds to satisfy its obligations under the Plan. To the extent that additional funds are necessary, third parties may provide such funds to the Reorganized Debtor. Other sources of cash may be explored and utilized by the Reorganized Debtor to the extent that such cash infusions are necessary to meet the obligations of the Plan. Debtor may also sell all of its assets or a portion of its assets to fund its obligations under the plan.

4.2 **Refinancing/Financing:** If necessary, the Reorganized Debtor may, in its sole discretion, seek to obtain refinancing from either a lending institution or from other sources in an effort to satisfy the necessary cash payments described in this Plan. In the event that the Reorganized Debtor obtains such financing, it shall not obligate the Reorganized Debtor to accelerate any of the payments or obligations set forth in this Plan. There shall be no prepayment penalty regarding plan payments.

4.3 **Auction:**

4.3.1 If all impaired classes of claims vote to accept the Plan of Reorganization, then Debtor shall fund the obligations of the Plan as indicated above.

4.3.2 If any class of impaired claims votes to reject the Plan, then Debtor will proceed with an auction of the Interests of the Reorganized Debtor. Any new value contribution

shall be used for working capital and to pay operating and plan expenses, but not to any payments to any insiders. Debtor will proceed with an auction of the Interests of the Reorganized Debtor on the sixtieth day after the confirmation hearing at 10:00 a.m., which may be adjourned by the Court or Debtor. The auction of the Interests shall occur at the offices of Robert N. Bassel at 25925 Telegraph Rd Ste 203, Southfield, MI 48033. It is contemplated that the auction shall take place prior to entry of the Confirmation Order. Debtor shall retain a broker to market the equity interests if the Court determines that a new value auction is required. Debtor shall also provide notice of the auction by publishing notice in the Detroit Free Press or the Detroit News.

      4.3.3 The following terms and conditions shall apply to The Debtor's consideration of any offer to be made at the auction:

1.     Any person including any Creditor in this Case or other party, including any Interest holder of Debtor, who wishes to make a cash offer for all of the Interests in the Reorganized Debtor, shall notify the Debtor's counsel Robert N. Bassel, 25925 Telegraph Rd Ste 203, Southfield, MI 48033, in writing of its intent to make an offer no later than two Business Days prior to the date of the auction. At the time of giving such notice, such party or parties, including any Interest holder, shall tender a bank check in the amount of $5,000, which amount shall be held by the Debtor's counsel in escrow as a deposit to be applied to the payment of the amounts due under the Equity Contribution Agreement. The remaining amount of the bid shall be paid within 30 days after the Auction Date.

2.     Such deposit shall be immediately refunded to any party, including any Interest holder, which shall not be the successful bidder for the Interest. The failure to give the required notice, or failure to provide the foregoing deposit shall constitute a waiver by any party in interest or the Interest holder of its right to bid at the auction.

3.     In addition to any cash paid as the result of the auction, which cash shall be fully paid on or before 30 days after the Auction Date, to be held in escrow by the Debtor's attorney, the successful purchaser shall:

    a.     be required to execute the Equity Contribution Agreement, attached; and

    b.     as the Interest holder of the Reorganized Debtor, acknowledge that the Reorganized Debtor shall be bound

by all of the obligations and payment terms as set forth in the Plan.

4. The Debtor reserves the right, in its reasonable business judgment, to set such other terms of conditions of bidding (provided that such terms and conditions are provided to all bidders prior to the commencement of auction), at the auction.

5. Except for provided herein, all bids must be for cash in the currency of the United States of America, on the terms and conditions set forth in the Equity Contribution Agreement. No credit bids shall be permitted. The initial bid shall be $5,000 and bidding shall be in $1,000 increments.

6. At the conclusion of the bidding, if any, Debtor shall announce the successful highest bid. In the event that the successful bidder fails to immediately execute and deliver to Debtor the Equity Contribution Agreement, the failure to provide that agreement shall constitute a waiver of such party's bid and the next and highest successful bidder shall be deemed the successful bidder.

 4.4 **Avoidance Actions**: On the Confirmation Date, the Avoidance Actions of The Debtor shall vest in the Reorganized Debtor. It does not appear, however, that any such Avoidance Actions exist.

 4.5 **Pre-payment**: The Reorganized Debtor may, but shall not be obligated to, pre-pay any of the claims at any time in its sole, absolute and unfettered discretion. If the Reorganized Debtor elects to pre-pay any obligation, it shall <u>not</u> incur any pre-payment penalty, any such pre-payment penalty contained in any pre-petition contract, agreement or document shall not apply.

 4.6 **omitted**

 4.7 **omitted**

## ARTICLE V

# EFFECT OF CONFIRMATION

5.1 **Discharge:** The confirmation of this Plan shall, and does hereby act to discharge and release the Claims of all Creditors against The Debtor, which shall constitute a full, total and complete settlement with said Creditors and Interest Holders. Confirmation shall also act as a merger and relinquishment of any and all Claims that Creditors have or may have against The Debtor as provided in the treatment of the Creditors in Articles II and III. The Debtor shall receive a discharge as contemplated by 11 U.S.C. §§524 and 1141 upon confirmation of the Plan, such discharge being as broad and all-inclusive as provided by law.

5.2 **Waiver:** Confirmation shall also constitute a waiver by Creditors of any right that they may have, unless supported by a written guarantee or provided by a federal or state statute to a taxing authority, to seek to enforce their Claims against any Insider, whether pursuant to an "alter ego" claim, a claim for "piercing" Debtor's or the Reorganized Debtor's corporate existence, or other similar claim.

5.3 **Financing and Capital Contributions:** There shall be no prohibition against the Reorganized Debtor merging, issuing additional stock or being acquired by another person, company, partnership or corporation, or obtaining any financing from any lender willing to provide any financing. The obtaining of financing shall not obligate the Reorganized Debtor to make any earlier payments or distribution except as may be provided in the Plan.

5.4 In the event of a conversion of the Case to a case under Chapter 7 of the Bankruptcy Code, all property of The Debtor, the debtor-in-possession or the Reorganized Debtor, including all property that will revest in the Reorganized Debtor pursuant to confirmation of the Plan and all property acquired by the Reorganized Debtor subsequent to confirmation of the Plan, shall be property of the relevant Chapter 7 estate.

## ARTICLE VI

## MODIFICATION OF THE PLAN

6.1     Debtor(s) may, from time to time, propose amendments or modifications of this Plan prior to its confirmation, without leave of the Court.     After confirmation, The Debtor or Reorganized Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) and any committee appointed by the Office of the U.S. Trustee only, remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Order of Confirmation or otherwise modify the Plan.

6.2     If the Bankruptcy Court determines that the modification affects all the Creditors, or if the Debtor(s) proposes a material modification affecting all Creditors, then such modification shall be governed by §1127 of the Bankruptcy Code and the Plan.

## ARTICLE VII

## JURISDICTION OF THE COURT

This Court shall retain jurisdiction in this matter until the Plan has been fully consummated including, but not limited to, the following reasons and purposes:

A.     The classification of the Claim of any Creditor and the re-examination of Claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors.  The failure by the Debtor or the Reorganized Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of any right to object to, or reexamine the Claim in whole or in part.

B.     The determination of all questions and disputes regarding title to the assets of the estate or Debtor, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor or the Reorganized Debtor or any other party.  This shall include, but not be limited to, any cause of action, avoiding power or right of the Debtor or the Reorganized Debtor to recover assets pursuant to the provisions

of the Bankruptcy Code, including, without limitation, Avoidance Actions and claims initiated under §§506 and 510 of the Bankruptcy Code.

C.      The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan.

D.      The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided as in the Plan.

E.      The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in support of confirmation of this Plan.

F.      The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor, the Reorganized Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary, including without limitation, injunctions to enforce releases or forbearance in favor of guarantors, which would assist the Reorganized Debtor to accomplish its obligations under the Plan.

G.      The review and approval of all professional fee applications for services rendered prior to the Confirmation Date and the review of any professional fees for services rendered in connection with the Plan after the Confirmation Date, to the extent that the Debtor or the Reorganized Debtor dispute all or a portion thereof.

H.       The entry of an order concluding and terminating this Case.

## ARTICLE VIII

## TITLE TO PROPERTY

8.1      Title to the property of the Debtor(s) shall vest in the Reorganized Debtor upon the final payment to be made under the Plan, and the automatic stay shall remain in effect until that time.  Notwithstanding this, the Debtor(s) shall be discharged from its status as Debtor and the

affairs and business of the Reorganized Debtor shall thereafter be conducted without Court involvement except as may be governed by the Plan.

## ARTICLE IX

### UNITED STATES TRUSTEE FEES

9.1     The Debtor(s) shall continue to pay to the United States Trustee the appropriate sums required pursuant to 28 U.S.C. §1930(a)(6) until such time as the Chapter 11 Case is closed by the Court.

## ARTICLE X

### EXECUTORY CONTRACTS

10.1     Unless addressed in Article III of this Plan or otherwise assumed or rejected by Final Order of the Bankruptcy Court, all executory contracts of The Debtor either (i) not expressly rejected or (ii) which are not within thirty (30) days after the Confirmation Date the subject of pending applications to reject and disaffirm, shall be deemed assumed.  Within thirty (30) days after the Confirmation Date, the Reorganized Debtor shall be allowed to file a Notice of Rejection of Executory Contract (the "Notice") with the Bankruptcy Court and the executory contract which is the subject thereof shall thereupon be rejected.  In connection with any executory contracts that are assumed, absent a provision to the contrary, the Debtor(s) shall be permitted to pay Claims arising from executory contracts that existed as of the Petition Date in 36 equal, monthly installments beginning one month after the Effective Date.

10.2     Any Creditor who has a Claim as a result of such rejection shall have thirty (30) days after receipt of the Notice to file a Proof of Claim, failing which such Claim shall be disallowed in its entirety.  The Notice shall contain a provision informing any potential creditor of this requirement and shall be served on such potential creditor(s).

## ARTICLE XI

### OBJECTIONS TO CLAIMS

11.1.    Debtor(s) and/or the Reorganized Debtor(s) and parties in interest may object to the allowance of any Claim, whether listed on the schedules filed by The Debtor or filed by any entity. No time limit for such objections is being created by this Plan

## ARTICLE XII

## LIMITATION OF LIABILITY

12.1    The Debtor(s), the Reorganized Debtor(s) and all of its directors, officers and agents, including its counsel, accountants, consultants and/or employees, shall not be liable to The Debtor, the Reorganized Debtor, any Creditor or Interest Holder of the Debtor or the Reorganized Debtor, or any other entity for any action taken or omitted to be taken in connection with their respective actions or duties in the Case or under this Plan, except that such liability may be imposed for willful misconduct.  The Bankruptcy Court shall have exclusive jurisdiction to resolve any questions concerning any such liability.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.    Notwithstanding anything in this Plan to the contrary, neither Debtor nor the Reorganized Debtor shall be obligated to make any payments towards any Contested Claim. Further, neither Debtor nor the Reorganized Debtor shall be required to make any payments for an Allowed Claim to any Creditor if the Debtor or the Reorganized Debtor have filed a motion, objection, adversary proceeding, state court proceeding or other similar notice against such Creditor alleging an objection, claim, cause of action, offset or counter-claim, such that if sustained and not paid by such Creditor would result in a disallowance of such Allowed Claim in accordance with §502(d) of the Code.

13.2.    The Debtor(s), the Reorganized Debtor and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan.  This shall include without

limitation any execution by The Debtor of UCC financing statements and the execution by creditors of any UCC termination and mortgage releases and termination. Unless a lien is expressly preserved in this Plan, as amended, or Order Confirming Plan, it shall be void and of no effect.

13.3. This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties in interest and their respective successors and assigns.

13.4 When the Debtor(s) or the Reorganized Debtor has made all payments and obligations required under this Plan all restrictions, negative covenants and other limitations on the Debtor's operations provided herein or in the Confirmation Order shall terminate.

13.5 The Reorganized Debtor(s) shall have the right to commence, continue, amend or compromise all causes of actions available to The Debtor(s), the bankruptcy estate(s) or the debtor(s) in possession, whether or not those causes of action were the subject of a suit as of the Confirmation Date, including but not limited to actions to collect receivables owed to the Debtor. The Reorganized Debtor(s) specifically reserves its right to commence, continue, amend or compromise all causes of action, whether or not described in the Disclosure Statement.

13.6 Upon the failure of the Debtor(s) or Reorganized Debtor to make any payment due on a secured or priority tax claim which is not cured within fifteen days of the mailing of a written notice of default by the creditor, such creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief in this Court.

13.7 For purposes of clarification, the Reorganized Debtor shall have the right to challenge any Claim through the claims objection process set forth in this Plan, which challenge may include but is not be limited to a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims shall include, without limitation, an

objection to the assessment of the Debtor's property that may or may not have been made by the respective taxing authority.

## DISCLOSURE STATEMENT

## II. <u>DESCRIPTION OF DEBTOR</u>

Debtor is a Michigan corporation which owns and operates a convenience store and the real estate upon which it operates at 32240 W. Jefferson Rockwood, MI 48173.

### A. <u>The Debtor-In-Possession</u>

On 9/7/2017 (the "Petition Date"), Debtor filed a Voluntary Petition under Chapter 11 of Title 11 of the United States Code, §§101 <u>et</u>. <u>seq</u>. in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 17-52595. This Case was assigned to the Honorable Thomas J. Tucker. Upon filing the petition for Chapter 11 reorganization, the Debtor became a "Debtor-in-Possession" as that term is understood in the Bankruptcy Code.

### B. <u>Debtor's Principals and Management</u>

*<u>Background</u>*

George Shammas is the chief reorganization officer of the Debtor. He is 68 years old, has been in the real estate and convenience store business since 1978, has a bachelors degree in literature, and has had an ownership interest in Debtor since 2000. Debtor is owned by 3 people, each of whom have filed individual chapter 13 bankruptcies which have been confirmed and fully consummated:

George Shammas
38420 Kingsway court
Rockwood, MI 48173
33.341668%

Yassin Selman
7370 Verona Drive
West Bloomfield, MI 48322
33.329166%

Atheer Shina

6711 Raven
Farmington, MI 48332
33.329166%

Pursuant to the confirmed chapter 13 bankruptcies, the shareholders' liability, if any, to Chemical Bank, has been discharged.

Mr. Shammas manages day to day operations of the Debtor without salary because there is not enough money to pay him. Upon confirmation, Mr. Shammas will retain his position.

*Compensation*

It is contemplated that postpetition, Mr. Shammas will not receive salary, and Mr. Selman will continue to receive a salary of approximately $200 per week, which he has received for the year prior to bankruptcy and postpetition. He does not receive any benefits. Mr. Shammas has not received a salary for the year prior to the petition, nor postpetition. Distributions to shareholders will only be paid to the extent of available funds. It is contemplated that postpetition, Mr. Shammas will receive no salary but Mr. Selman will continue to receive $200 per week in salary without benefits.

*Legal Relationships*

See Section *III*. D. for details regarding insider transactions.

**C.     Description of Debtor's Business and Causes for Chapter 11 Filing**

Debtor owns and operates a convenience store and the real estate upon which it operates in Rockwood, Michigan.     Debtor's chapter 11 filing was caused by the economic downturn in the economy and the decreased disposable income of its customers, and a competitor which is now out of business.     Debtor's business is fairly strong, however.  Debtor believes that it will be able to reorganize its business.

Prepetition, Debtor had a lending/borrower relationship with Chemical Bank and its predecessors.  Specifically,

A. On May 31, 2007, Debtor executed a promissory note in the amount of $665,000.00 ("Note 1") and on November 26, 2008 Debtor executed a second promissory note in the amount of $135,000.00 ("Note 2") (collectively "Notes"), in favor of Oakland Commerce Bank as predecessor to Chemical Bank, successor by merger to Talmer Bank and Trust, successor in interest to Talmer West Bank, formerly known as Michigan Commerce Bank, successor by consolidation to Oakland Commerce Bank ("Bank/Lender"). (Note: Notes were subsequently modified by the Confirmation Order in Debtor's previous bankruptcy, Case No.: 11-52851-tjt).

B. To secure repayment of the loans evidenced by the Notes, Debtor executed two Security Agreements ("the Security Agreements")each granting Lender a first-priority, security interest and liens in all of its assets, including without limitation, its equipment, inventory, accounts, securities, instruments, and general intangibles. Lender perfected its interest by filing UCC-1 and continuation statements.

C. To secure repayment of the loans evidenced by the Notes, Debtor granted Bank a mortgage on the real property commonly known as 32234-40 W. Jefferson, Rockwood, MI 48173

D. As of the Petition Date, the principal and interest amounts owed on Note 1 by Debtor to Bank was $ 379,895.78. Debtor does not believe that it owes any other monies to Bank.

## III. POST-PETITION EVENTS OF SIGNIFICANCE

### A. <u>Post-Petition Transfers Outside the Ordinary Course of Business</u>

Debtor has made no post-petition transfers outside the ordinary course of business.

### B. <u>Chapter 11 Events</u>

This Disclosure Statement is not designed to provide a full, detailed description of the motions filed and orders entered or other developments in the bankruptcy proceeding. Further, the Disclosure Statement does not address every motion filed or order entered in the proceeding. Rather, the Disclosure Statement merely provides a summary of the major motions filed or orders entered. Creditors are urged to review the bankruptcy court docket, which lists every document filed in the bankruptcy case, and the bankruptcy court file, which contains all of the filed documents.

*Cash Collateral and Adequate Protection and Postpetition Financing Orders*

Debtor filed an application for the use of cash collateral.  An interim cash collateral order was entered as indicated below

| | | |
|---|---|---|
| | 19<br>(7 pgs) | Interim Order Granting Debtor's Use of Cash Collateral Under 11 USC 363, Granting Adequate Protection Under 11 USC 363, and Scheduling a Final Hearing Under Federal Bankruptcy Rule 4001(c) (RE: related document(s)8 Chapter 11 First Day Motion to Use Cash Collateral filed by Debtor In Possession Patio Market, Inc.). Hearing to be held on 10/18/2017 at 11:00 AM Courtroom 1925 for 8, (Cotton, N) (Entered: 09/20/2017) |
| 09/20/2017 | | |

on 09/25/2017 at Docket # 19, which became a final order on 10/18/2017 as indicated below:

| | | |
|---|---|---|
| | | Minute Entry. Hearing Held; No Objections Filed; Interim Order Becomes Final Order. (related document(s): 8 Chapter 11 First Day Motion to Use Cash Collateral filed by Patio Market, Inc.) (mvozn) (Entered: 10/18/2017) |
| 10/18/2017 | | |

The key terms of the Order follow:

"3. On account of Debtor's use of Cash Collateral and the imposition of the automatic stay pursuant to 11 USC 362, Chemical Bank is granted the following adequate protection pursuant to 11 USC 361 and 362(c)

a)  Chemical Bank's first priority liens against and security interest in all assets of the Debtor, including Cash Collateral, are ratified and confirmed and shall continue in full force and effect, subject to any liens with priority under nonbankruptcy law;

b). Debtor will make monthly adequate protection payments of $1,800.00 to    Chemical Bank beginning September 25, 2017 and continuing on the twenty-fifth day of every month thereafter so long as Debtor is authorized to use cash collateral absent further Court Order . Payment default shall occur if payment is not made on or before the due date.  Chemical Bank shall be permitted to apply the monthly payments to the principal, interest or expense owing under the indebtedness in an order determined by Bank.

c). Chemical Bank is granted a general continuing and replacement postpetition, first-priority, security interest in and lien on the same types of property in which Bank was granted a security interest in the Security Agreements, including, without limitation, Debtor's equipment, inventory, accounts, securities, instruments, general intangibles, proceeds, products, offspring, and to the extent Chemical Bank has a perfected security interest in the particular prepetition assets, in the same priority as existed prepetition, to the

extent the value of such creditor's interest in cash collateral is diminished, pursuant to 11 USC §§ 361 and 552.

All liens and security interests in favor of Chemical Bank, whether now existing or granted under the terms of this Order are in addition to, and not in substitution for, its existing security interests and liens and shall be deemed to have been filed and perfected at the time and on the date of entry of this Order, and the entry of this Order shall constitute perfection of such liens and security interests, without reliance of the filing of any financing statements or recordings of any documents or other act or filing. "

Debtor is operating pursuant to the following budget, and secured claimants have been granted a replacement lien. The cash collateral order is the only postpetition financing order.

| **PATIO MARKET**<br>**projected budget**<br>**(amounts are prorated)** | **Monthly** |
|---|---|
| Sales & Commissions | $73,200.00 |
| Less Cost of Goods | $60,400.00 |
| **Gross Profit** | $12,800.00 |
| | |
| USTrustee Fees | $320.00 |
| Bookkeeping | $200.00 |
| Bank & CC Charges | $1,100.00 |
| Insurance | $560.00 |
| Licenses | $150.00 |
| Alarm | $40.00 |
| Postage | $65.00 |
| Repairs | $200.00 |
| Supplies | $180.00 |
| Telephone | $180.00 |
| Utilities | $1,700.00 |
| Salaries | $3,665.00 |
| Real Estate Taxes | $840.00 |
| Personal Property Tax | $50.00 |
| **Total Operating Exp** | $8,930.00 |
| | |
| **NET PROFIT** | $3,870.00 |

_Motions for Relief from Stay_

n.a.

Motions regarding executory contracts

n.a.

<u>The Plan and Disclosure Statement</u>

Debtor filed its Combined Disclosure Statement and Plan of Reorganization. The Debtors believes that its Plan of Reorganization is feasible, as demonstrated by the projections. Accordingly, the Debtor is extremely confident in its ability to meet the projections and satisfy claims under the Plan.

**C.     Pending and Contemplated Litigation Involving Debtor**

There is no pending or contemplated litigation involving the Debtor. The Debtor reserves the right to sue any entities who fail to pay receivables owed to the Debtor.

**D.     Insider Transactions**

There have been no insider transactions.

**IV.     ASSETS AND LIABILITIES**

**A.     Liquidation Analysis**

Debtor(s)' Liquidation Analysis accompanies this Plan and Disclosure Statement. Debtor believes that the value of property is approximately $255,000 for purposes of confirmation based upon the experience of the Debtor's principals in the convenience store and real estate industry.

In the event that the Plan is not accepted by the Creditors or is not otherwise confirmed by the Bankruptcy Court, the Debtor believes that its assets would be liquidated either:

1.     Pursuant to a plan of liquidation under Chapter 11 of the Code; or,

2.     In a straight bankruptcy liquidation under Chapter 7 of the Code.

Under either alternative, the operations of the Debtor would cease, as Debtor would only realize the liquidation value of its assets. Debtor is confident that in a liquidation scenario, where the Debtor will be unable to generate any income going forward, unsecured creditors will not do better in a chapter 7 liquidation than in a chapter 11 bankruptcy.

***Eastern District of Michigan***
***Claims Register***

17-52595-tjt Patio Market, Inc.

**Judge:** Thomas J. Tucker     **Chapter:** 11
**Office:** Detroit     **Last Date to file claims:**
**Trustee:**     **Last Date to file (Govt):**

| *Creditor:* (24946290) Chemical Bank c/o Lana Escamilla 7950 Moorsbridge Suite 400, Office 3 Portage, MI 49024 | | *Claim No: 1* *Original Filed Date*: 09/29/2017 *Original Entered Date*: 09/29/2017 | *Status:* *Filed by:* CR *Entered by:* Lan *Modified:* |
|---|---|---|---|

Amount claimed: $379692.82
Secured claimed: $350000.00

*History:*

| Details | ⊙ | 1-1 | 09/29/2017 Claim #1 filed by Chemical Bank, Amount claimed: $379692.82 (Escamilla, |
|---|---|---|---|

*Description:* (1-1) Money Loan Secured by Mortgage, All Asset lien
*Remarks:*

| *Creditor:* (24946293) Wayne County Treasurer 400 Monroe, 5th Floor Detroit, MI 48226 | | *Claim No: 2* *Original Filed Date*: 10/03/2017 *Original Entered Date*: 10/03/2017 | *Status:* *Filed by:* CR *Entered by:* Rhor *Modified:* |
|---|---|---|---|

Amount claimed: $2591.67
Secured claimed: $2591.67

*History:*

| Details | ⊙ | 2-1 | 10/03/2017 Claim #2 filed by Wayne County Treasurer, Amount claimed: $2591.67 (Bra |
|---|---|---|---|

*Description:* (2-1) REAL ESTATE TAX - 32234 W JEFFERSON AVE., BROWNSTOWN, MI
*Remarks:* (2-1) 12% YEARLY INTEREST PURSUANT TO MCL211.59 AND MCL211.78a; 18% YEARLY I
YEARS PURSUANT TO MCL211.78g

Pursuant to the filed and scheduled proofs of claim, to which Debtor does not stipulate, there

are secured claims equal to the value of the collateral, e.g. approximately $255,000 and unsecured

claims of approximately $475,000 [including the deficiency amounts for the entities holding

prepetition security interests]. Debtor believes that its Plan is fair and equitable to creditors and it is

in creditor's best interest to vote in favor of the Debtor's Plan.

### B.  Risks, Conditions and Assumptions In Liquidation Analysis

Debtor has used fair market value and forced sale/auction value to determine the value of its assets. The risks, conditions and assumptions are outlined in the Liquidation Analysis.  Debtor asserts that under any such scenario, unsecured creditors will receive no payments on their claims.

### C.  Causes of Action

At this time, Debtor(s) is planning to file no lawsuits against any entities.

### D.  Priority and Secured Claims and Administrative Expenses

Based on a review of the Claims Register, it appears that there are no priority claims. It is estimated that the only unpaid administrative expense at the time of confirmation will be Robert Bassel, attorney for the Debtor. It is estimated that the amount of his administrative expense claim will be approximately $5,000. Based on Debtor's belief as to the value of the collateral, there are secured claims in the amount of $255,000 approximately.

### E.  Unsecured Claims

It appears that there are approximately $475,000 in unsecured claims for Debtor, including the deficiency claims.

### F.  Guaranteed Debt

It appears that the Chemical Bank debt was guaranteed by the 3 shareholders of Debtor, or they are co-obligors, however, the claims against the shareholders were discharged in the prior chapter 13 bankruptcies filed by each shareholder.

## VI.  IMPLEMENTATION OF PLAN

### A.  Summary of Plan Treatment.

See plan treatment above in Plan Articles II and III.

For purposes of clarification, it appears that the following entities have priority as to the following collateral, with respect to the indicated priority and regarding the indicated amount of their secured claims and their unsecured claims.

| Collateral | Claimant | Priority | Claim | Secured Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|
| 32240 W. Jefferson, Rockwood, MI 48173 and contents | Wayne County/Brownstown | 1st | 2500 | 2500 | 0 |
| 32240 W. Jefferson, Rockwood, MI 48173 and contents ; approx. value $250,000 | Chemical Bank | 2nd | 379,000 | 247,500 | [total unsecured claim is 131,500] |
| Personal Property subject to purchase money security interest | Roy Livengood | 1st [assuming Wayne County paid from real estate collateral | 4500 | 4500 | 0 |

### B.  **Financial Information**

The information contained in this Disclosure Statement has not been subject to a certified audit.  The information has been compiled from the records of Debtor and is true and accurate to the best of Debtor's knowledge, information and belief.  The information is also based on an income projections performed by Debtor.

### *Projections*

Accompanying this Disclosure Statement are cash flow projections compiled by Debtor which cover the time period in which Debtor proposes to effectuate payments under the Plan.  Since the cash flow projections are based on estimates and assumptions which are inherently subject to uncertainty and variation depending upon evolving events, neither the Debtor, nor its

principals nor its management warrant that the results reflected in the cash flow projections will be achieved.

These cash flow projections indicate that Debtor will generate a positive cash flow going forward sufficient to meet all of its obligations to creditors under the Plan (where the pro formas indicate operating at a deficit, Debtor will receive funds from third parties). The projections give an example of the payments required to be made under the Plan and demonstrate how the distributions to creditors will affect Debtor's cashflow. The increases in revenue and expenses set forth in the projections are based upon current market conditions, historical growth and anticipated growth. Where there is a conflict between the terms of the Plan and the projections, the terms of the Plan shall control. The projections are being provided for illustrative purposes.

A summary of Debtor's financial information relating to the Debtor's post-petition operations also accompanies this plan.

A summary of Debtor's financial condition prior to the commencement of Debtor's bankruptcy proceeding also accompanies the plan.

## C.     Post-Petition Details

Debtor proposes to continue its operations with the same management structure. It is contemplated that George Shammas, who is the day to day manager of the Debtor, shall receive no wages nor benefits. Distributions to shareholders will only be paid to the extent of available funds.

## D.     Explanation of Auction Procedures

Debtor takes the position that the best way to determine the market value of the Reorganized Debtor (i.e., the value of the company after a plan is confirmed) is to conduct an auction sale to bid for the equity interest of the Reorganized Debtor. Debtor asserts that such an auction will satisfy the legal requirements for "cramdown" (i.e., to force the confirmation of the

Plan over the objections of creditors). Accordingly, this section is designed to describe to creditors how the auction sale set forth in the Plan will work.

If any class of Creditors votes to reject the Plan and if any new value contribution by Debtor's principals is found to be insufficient, then the Debtor will proceed with an auction of the Interests of the Reorganized Debtor on the sixtieth day after confirmation at 10:00 a.m., which may be adjourned by the Court or Debtor. The auction of the Interests shall occur at the offices of Robert N. Bassel, 25925 Telegraph Rd Ste 203, Southfield, MI 48033. If the Plan has been accepted by all classes of Creditors, then the auction shall be cancelled. This is because a cramdown of a Class of Creditors will not be necessary as the Plan has been accepted by each class. If an impaired Class of Creditors votes to reject the Plan and new value is required to satisfy the absolute priority rule, the auction will proceed. It is contemplated that a Confirmation Order shall not be entered prior to the auction. If a new value auction is required, Debtor shall hire a broker to market the equity interests and shall publish notice of the auction in the Detroit News or Detroit Free Press.

At the auction sale, if one takes place, persons including Creditors and parties in interest shall have the opportunity to bid for the equity interest in the Reorganized Debtor. In other words, interested parties shall have the opportunity to purchase the equity or ownership of the Reorganized Debtor upon confirmation of the Plan. Any Creditor or any other party (including any insider or Interest holder who bids) or prospective purchaser who is the successful highest bidder will be bound by all of the obligations set forth in the Order Confirming Plan and the Plan. For example, the successful bidder will be allowed to utilize the assets of Debtor, but must recognize that the assets of the Debtor are subject to the payment obligations under the Plan. Credit bids will not be allowed

Any party or party in interest in this Case, including any Interest holder of Debtor, who wishes to make a cash offer for all of the Interests of the Reorganized Debtor, shall notify the Debtor's counsel in writing of its intent to make an offer no later than two Business Days prior to

the date of the auction sale. At the time of giving such notice, such party or parties, including any Interest holder, shall tender a bank check in the amount of $5,000.00, which amount shall be held by the Debtor's counsel, in escrow, as a deposit to be applied to the payment of the amounts due under the Equity Contribution Agreement.

Such deposit shall be immediately refunded to any party in interest or Interest holder that shall not be the successful bidder for the Interest. The failure to give the required notice, or failure to provide the foregoing deposit shall constitute a waiver by any party in interest or the Interest holder of its right to bid at the auction.

In addition to any cash paid as the result of the auction, which cash shall be fully paid on or before 30 days after the Auction Date to be held in escrow by the Debtor's attorney, the successful purchaser, including the Interest holder if it is the successful purchaser, shall be required to execute the Equity Contribution Agreement attached and shall become the Interest holder of the Reorganized Debtor.

At the conclusion of the bidding, if any, The Debtor shall announce the successful highest bid. Upon confirmation of the Plan, the proceeds from the auction sale shall be used for working capital, plan and operating expenses, but not for payments to insiders.

### E. Tax Ramifications

#### 1. To Debtor

Debtor believes that the forgiveness of indebtedness which may result from a discharge granted by the confirmation of the Plan will not result in any significant adverse tax consequence to the Debtor.

#### 2. To Creditors

The tax consequences to each Creditor resulting from confirmation of the Plan may vary depending upon each Creditor's particular circumstances. Debtor recommends that creditors

or holders of Claims obtain independent tax counsel to advise them as to the tax consequences of the Plan.

# VII.   LEGAL REQUIREMENTS

*A. Voting procedures*

*Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interest, that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the plan.*

*Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.*

*Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or(b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.*

*Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the debtor's attorney by the deadline previously established by the court.*

*Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.*

*A ballot that is not received by the deadline will not be counted.*

*If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the debtor's attorney.*

*B. Acceptance*

*The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.*

*C. Confirmation*

*11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek*

*independent legal counsel to answer any questions concerning the Chapter 11 process. Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:*

*1. Each class of impaired creditors and interest must accept the plan, as described in paragraph VII.B., above.*

*2. Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.*

*D. Modification*
*The debtor reserves the right to modify or withdraw the plan at any time before confirmation.*

*E. Effect of confirmation*
*If the plan is confirmed by the Court:*

*1. Its terms are binding on the debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.*

*2. Except as provided in the plan and in 11 U.S.C. § 1141(d):*

*(a) In the case of a corporation that is reorganizing and continuing business:*
*(1) All claims and interests will be discharged.*
*(2) Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.*

*(b) In the case of a corporation that is liquidating and not continuing its business:*
*(1) Claims and interests will not be discharged.*
*(2) Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.*

*(c) In the case of an individual or husband and wife:*
*(1) Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 1141(d).*
*(2) Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§ 523 and 1141(d)).*

*Because the case is a reorganizing business, Section E. 2(a) above applies and 2(b) and 2(c) do not apply.*

**DEBTOR**

By:     /s/ George Shammas

George Shammas, Principal

Dated:  1/8/2018

Prepared By:

By:  /s/ Robert N. Bassel
Robert N. Bassel  (P 48420)
Attorneys for Debtor
P.O. Box T
Clinton, MI 49236
248.835.7683

# EQUITY CONTRIBUTION AGREEMENT

This Equity Contribution Agreement made as of this___ day of _____ 2018, by and between _____, a person/corporation (described in this Agreement as "Purchaser"), and Debtor.

**WHEREAS:**

A.    The Debtor is in bankruptcy proceedings currently pending before the United States Bankruptcy Court for the Eastern District of Michigan.

B.    Under the terms of the Debtor's Plan, in certain circumstances, all of the equity Interests (as defined in the Plan hereafter the "Interests") in the Debtor will be canceled, and such Interests in the Debtor are to be sold to Purchaser or some other entity organized by the Purchaser for the aggregate sum of _____, unless higher cash offers are received for the Interests in accordance with the Plan.

C.    The Debtor has conducted the required auction relating to the sale of the Interests under the Plan, and the parties to this Agreement are the parties obligated to purchase the Interests of the Debtor under the Plan.

D.    Purchaser will, under the terms of this Agreement, become the owner of the Interests.

**NOW THEREFORE** in consideration of the mutual covenants herein contained, and other good and valuable consideration, now paid by each of the parties hereto to the other, the receipt and sufficiency of which is hereby acknowledged, the parties to this Agreement agree each with the other as follows:

## ARTICLE I - DEFINITIONS

1.01    Defined Terms

Whenever used in this Agreement, the following words, phrases and expressions shall have the following meanings:

"Interests" shall mean the equity interests of the Debtor as defined in the Plan.

"Filing Date" shall mean the date of the filing of the Case.

"New Equity Interests" shall mean the Interests in the Reorganized Debtor as the same may exist immediately after the confirmation of the Plan in accordance with the terms of the Plan and the terms of this Agreement.

"Plan" shall mean the Chapter 11 Plan filed by Debtor, together with any amendments or modifications of the same.

"Reorganized Debtor" shall mean the Debtor as it may exist after the confirmation of the Plan

## ARTICLE 2 - THE PURCHASE

### 2.01    **Payment**

On the Effective Date of the Plan, Purchaser shall pay to the Debtor the sum of $_____, in exchange for the Interests in the Reorganized Debtor. All other payments hereunder shall be in cash, and transferred to the Debtor by certified funds or wire transfer as instructed by the Debtor. No party to this Agreement shall be allowed to setoff the amount of its claim against the Debtor in the Debtor's bankruptcy proceeding against any amount payable hereunder.

### 2.02    **Use of Proceeds**

Purchaser acknowledges and agrees that the proceeds paid to the Debtor under the provisions of Article 2.01 hereof shall be used by the Debtor to satisfy the obligations under the terms of the Plan with respect to the Claims described in the Plan, and together with funds in the Debtor's possession shall be used to satisfy other Claims under Article 2 of the Plan and for general business purposes.

### 2.03    **Assumption of Plan Obligations**

Purchaser does hereby agree to assume all obligations of the Plan upon and after confirmation of the Plan.

## ARTICLE 3 - REPRESENTATIONS AND WARRANTIES

Purchaser acknowledges that Debtor is relying on the following representations and warranties of the others in entering into this Agreement and each specifically represents and warrants to the others that:

(a)    **Due Organization and Corporate Authority**

If Purchaser is a corporation, it is a corporation duly organized, validly existing and in good standing under the laws of the State of_____.

(b)    **Authorization**

If Purchaser is a corporation, the execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate action on its part.

(c)    **Consents**

No consent, approval, authorization or order of, and no filing with or notification to, any domestic or foreign governmental agency, body, regulatory authority, bureau, commission or

instrumentality, or other person or entity (including, without limitation, persons or entities having contractual relationships with the Purchaser) is required to be made or obtained in connection with the execution, delivery and performance of this Agreement.

(d) **Absence of Conflicts**

The execution, delivery and performance of this Agreement is not prohibited by, and does not violate, any provision or result in the breach of (a) the certificate of incorporation or bylaws of the Purchaser, if it is a corporation, or (b) any contract, indenture, agreement, lease or license relating to the businesses of the Purchaser and to which the Purchaser is a party or by which it or its properties or assets are bound.

(e) **Due Execution and Enforceability**

This Agreement has been duly executed and delivered by the Purchaser and constitutes a legal, valid and binding obligation of the Purchaser.

(f) **Survival of Representations and Warranties**

The representations and warranties provided for herein shall be true and correct on the Confirmation Date as if then made and shall, together with all other covenants herein, survive the execution hereof and the Confirmation Date.

## ARTICLE 4 - GENERAL

4.01 **Successors**

This Agreement shall be binding upon and shall inure to the benefit of the parties to this Agreement, their successors and their permitted assigns.

4.02 **Time of the Essence**

Time shall be of the essence of this Agreement and the transactions contemplated hereby.

4.03 **Severability**

The invalidity of any provision of this Agreement or any covenant herein contained on the part of any party shall not affect the validity of any other provision or covenant contained in this Agreement.

4.04 **Interpretation**

The division of this Agreement into Articles and Sections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement. The terms "this Agreement", "hereof", "herein", "hereunder" and similar expressions refer to this Agreement and not to any particular Article, Section or other portion hereof.

4.05 **Entire Agreement**

This Agreement, the Plan and any applicable Final Order entered by the Bankruptcy Court constitutes the entire agreement between the parties respecting the subject matter hereof. There are not and shall not be any oral statements, representations, warranties, undertakings or agreements between the parties. This Agreement may not be amended or modified in any respect except by written instruments signed by the duly authorized representatives of the parties to this Agreement.

4.06 **Governing Law**

This Agreement has been entered into and delivered and shall be construed in accordance with and governed by the applicable laws of the State of Michigan and federal laws of the United States of America applicable therein without reference to its conflict of laws principles.

4.07 **Assignment**

This Agreement may not be assigned, in whole or in part, by any party to this Agreement without the prior written consent of the other party hereto, which consent may be granted or withheld in the sole discretion of the consenting party.

**IN WITNESS WHEREOF** the parties hereto have executed this Agreement as of the date and year first above written.

**DEBTOR**                                      **PURCHASER**

By: _____          By: _____

Its: _____          Its: _____

## LIQUIDATION ANALYSIS AS OF PETITION DATE

| COLLATERAL | SECURED AND PRIORITY CREDITOR [based on filed proofs of claim and scheduled claims] | MARKET VALUE/ FORCED SALE VALUE[1] based on appraised values where applicable | APPROXIMATE AMOUNT OF SECURED/PRIORITY CLAIMS | EQUITY |
|---|---|---|---|---|
| Real Estate, fixtures, All personalty [other than as indicated below]; The collateral is the property located at 32240 W. Jefferson, Rockwood, MI 48173 | First Priority Secured Claimant:Wayne County/City of Brownstown | 250,000 (M) 100,000 (FS) | $2,500 | 0 (M) 0(FS) [after taking into account all liens] |
| Real Estate, fixtures, all personalty [other than as indicated below]; The collateral is the property located at 32240 W. Jefferson, Rockwood, MI 48173 | Second Priority Secured Claimant: Chemical Bank | 250,000 (M) 100,000 (FS) | Asserting claim of $379,000, of which $247,500 is secured and $131,500 is unsecured per 11 U.S.C. §506 | 0 (M) 0(FS) |
| Personal Property, inventory subject to purchase money security interest | First Priority Roy Livengood | 4,500 (M) 2,225 (FS) | Asserting claim of $4,500, all of which is secured per 11 U.S.C. §506 | 0 (M) 0(FS) |
|  |  |  |  |  |

[1] Unless otherwise stated, values are not based upon appraisals and are estimated by Debtor's principals based upon their experience in the real estate/convenience industry.

| TOTAL | | 255000 (M) <br> 102,225 (FS) | | $0 (M) <br> $0 (FS) |
|---|---|---|---|---|

**Post-Petition Liabilities**

     Administrative Claim [estimated]:       $5,000.00


**Pre-Petition Liabilities**

     Secured Claims:                 $255,000

     Priority Clams                $200,000

     Unsecured Claims [estimated]:      <u>$131,500</u>


**Distribution of Proceeds of Assets in Event of Liquidation**

- Gross Proceeds from Liquidation:    $255,000 (assuming reorg value realized)
- Less Total of:

-- Secured Claims:            $equal to value of collateral

       Priority Claims         $200,000

-- Admin. Expenses:         $5,000.00

_____

     TOTAL:                $negative

- Proceeds Available to Pre-Petition Unsecured Creditors:      $0
- Total Unsecured Claims [estimated]    $131,500
- Percent Available to Pre-Petition Unsecured Creditors:     0%

- Proceeds Available for Equity Interests:     residual

Prepetition Financials Patio

| | 2014 | 2015 | 2016 |
|---|---|---|---|
| Gross Receipts | 702,384 | 778,005 | 915,260 |
| Cost of Goods Sold | 582,782 | 638,635 | 736,263 |
| Other Income | 68,148 | 70,861 | 68,846 |
| Total Income | 187,750 | 210,231 | 248,203 |
| | | | |
| Compensation of Officers | 10,031 | 3,762 | 0 |
| Salaries and Wages | 10,806 | 20,388 | 53,284 |
| Repairs and maintenance | 6,235 | 13,055 | 3,945 |
| Taxes and Licenses | 45,703 | 43,071 | 62,877 |
| Interest | 23,902 | 15,979 | 15,981 |
| Depreciation | 1,890 | 1,890 | 1,890 |
| Other deductions | 67,706 | 55,939 | 56,872 |
| Total Deductions | 166,273 | 154,084 | 194,849 |
| | | | |
| Ordinary Business Income | 21,477 | 56,147 | 53,354 |
| | | | |

Patio Postpetition Financials

| | September 2017 | October 2017 | November 2017 |
|---|---|---|---|
| Sales | 76,806.70 | 77265.72 | 66,518.36 |
| Cost of Goods Sold | 62,758.53 | 62,386.34 | 56,610.36 |
| Gross Profit | 14,048.17 | 14,879.38 | 9,908 |
| | | | |
| Officer Compensation | 1000 | 800 | 800 |
| Salaries & Wages | 875.00 | 700 | 700 |
| Payroll Taxes | 169.34 | 169.34 | 250.66 |
| Sales Taxes | 3,642.25 | 3662.26 | 3490.04 |
| Insurance | 568.00 | 568.00 | 568.00 |
| Water | 657.08 | | 262.54 |
| Utilities | 1,851.96 | 2110.03 | 2018.65 |
| Rental Equipment | 156.55 | 152.50 | 152.50 |
| Repairs & Maintenance | 2,175.00 | 496.60 | 278.20 |
| Supplies | 579.26 | 427.65 | 465.21 |
| Telephone | 242.03 | | |
| Alarm | 38.99 | 38.99 | 38.99 |
| Credit card fees | 978.26 | 1135.12 | 1110.01 |
| Postage | 49 | 20 | 29 |
| Water | | | 262.54 |
| Bookkeeper | | 500 | 500 |
| USTrustee | | 325 | 650 |
| Commissions | | 1855 | 1867.27 |
| Garbage | 71.49 | 200.65 | 72.28 |
| Apartment Rental Misc. Commissions | 900 | 900 | 900 |
| Other Income: Lottery Comm | 2,850.55 | 2935 | 2027.55 |
| Net Income | 6619.51 | 9355.14 | 3726.02 |

Patio  Projections

| Patio Market, Inc. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Projection of Income & Expenses- Plan Payments | | | | | |
| | Month | Month | Month | Month | Month | Month | Month | Month |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| INCOME | | | | | | | | |
| Sales & Commissions | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 |
| Less Cost of Goods | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 |
| Gross Profit | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 |
| | | | | | | | | |
| EXPENSES | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 |
| | | | | | | | | |
| Money Available for Plan Payments | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 |
| | | | | | | | | |
| Plan Payments | | | | | | | | |
| Class Chemical Bank | 2,030.03 | 2,030.03 | 2,030.03 | 2,030.03 | 2,030.03 | 2,030.03 | 2,030.03 | 2,030.03 | 2,030.03 |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 |
| Class Roy Littlegood | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 |
| Class Wayne County | 515.10 | 515.10 | 515.10 | 515.10 | 515.10 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Plan Payments | 4,493.55 | 4,493.55 | 4,493.55 | 4,493.55 | 4,493.55 | 3,978.45 | 3,978.45 | 3,978.45 | 3,978.45 |
| Cash Flow | | | | | | | | |
| Monthly Cash Flow | -513.55 | -513.55 | -513.55 | -513.55 | -513.55 | 1.55 | 1.55 | 1.55 | 1.55 |
| Financing/Sale | | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 9,486.45 | 8,972.90 | 8,459.35 | 7,945.80 | 7,432.25 | 7,433.80 | 7,435.35 | 7,436.90 | 7,438.45 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Patio Market, Inc. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| INCOME | | | | | | | | |
| Sales & Commissions | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 |
| Less Cost of Goods | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 |
| Gross Profit | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 |
| | | | | | | | | |
| EXPENSES | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 |
| | | | | | | | | |
| Money Available for Plan Payments | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 |
| | | | | | | | | |
| Plan Payments | | | | | | | | |
| Class Chemical Bank | 2,030.03 | 2,030.03 | 2,030.03 | 2,030.03 | 2,030.03 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 |
| Class Roy Littlegood | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 |
| Class Wayne County | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Plan Payments | 3,978.45 | 3,978.45 | 3,978.45 | 3,978.45 | 3,978.45 | 3,774.78 | 3,774.78 | 3,774.78 | 3,774.78 |
| Cash Flow | | | | | | | | |
| Monthly Cash Flow | 1.55 | 1.55 | 1.55 | 1.55 | 1.55 | 205.22 | 205.22 | 205.22 | 205.22 |
| Financing/Sale | | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 7,440.00 | 7,441.55 | 7,443.10 | 7,444.65 | 7,446.20 | 7,651.42 | 7,856.64 | 8,061.86 | 8,267.08 |
| | | | | | | | | |

| Patio Market, Inc. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| INCOME | | | | | | | | | |
| Sales & Commissions | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 | 73,200.00 |
| Less Cost of Goods | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 | 60,400.00 |
| Gross Profit | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 | 12,800.00 |
| | | | | | | | | | |
| EXPENSES | | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 |
| | | | | | | | | | |
| Money Available for Plan Payments | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 | 3,980.00 |
| | | | | | | | | | |
| Plan Payments | | | | | | | | | |
| Class Chemical Bank | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 |
| Class Roy Littlegood | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 2,052.00 | 0.00 | 0.00 |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 |
| Class Wayne County | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Plan Payments | 3,774.78 | 3,774.78 | 3,774.78 | 3,774.78 | 3,774.78 | 3,774.78 | 5,726.78 | 3,674.78 | 3,674.78 |
| Cash Flow | | | | | | | | | |
| Monthly Cash Flow | 205.22 | 205.22 | 205.22 | 205.22 | 205.22 | 205.22 | -1,746.78 | 305.22 | 305.22 |
| Financing/Sale | | | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 8,472.30 | 8,677.52 | 8,882.74 | 9,087.96 | 9,293.18 | 9,498.40 | 7,751.62 | 8,056.84 | 8,362.06 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| Patio Market, Inc. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 |
| INCOME | | | | | | | | | |
| Sales & Commissions | 73,200.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 |
| Less Cost of Goods | 60,400.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 |
| Gross Profit | 12,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 |
| | | | | | | | | | |
| EXPENSES | | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 |
| | | | | | | | | | |
| Money Available for Plan Payments | 3,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 |
| | | | | | | | | | |
| Plan Payments | | | | | | | | | |
| Class Chemical Bank | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 |
| Class Roy Littlegood | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 |
| Class Wayne County | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Plan Payments | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 |
| Cash Flow | | | | | | | | | |
| Monthly Cash Flow | 305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 |
| Financing/Sale | | | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 8,667.28 | 9,972.50 | 11,277.72 | 12,582.94 | 13,888.16 | 15,193.38 | 16,498.60 | 17,803.82 | 19,109.04 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| Patio Market, Inc. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 |
| INCOME | | | | | | | | | |
| Sales & Commissions | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 |
| Less Cost of Goods | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 |
| Gross Profit | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 |
| | | | | | | | | | |
| EXPENSES | | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 |
| | | | | | | | | | |
| Money Available for Plan Payments | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 |
| | | | | | | | | | |
| Plan Payments | | | | | | | | | |
| Class Chemical Bank | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 |
| Class Roy Littlegood | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 |
| Class Wayne County | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Plan Payments | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 |
| Cash Flow | | | | | | | | | |
| Monthly Cash Flow | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 |
| Financing/Sale | | | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 20,414.26 | 21,719.48 | 23,024.70 | 24,329.92 | 25,635.14 | 26,940.36 | 28,245.58 | 29,550.80 | 30,856.02 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| Patio Market, Inc. | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Month | Month | | | | | | | | |
| | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
| **INCOME** | | | | | | | | | | |
| Sales & Commissions | 75,000.00 | 75,000.00 | 75,000.00 | 75,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 |
| Less Cost of Goods | 61,200.00 | 61,200.00 | 61,200.00 | 61,200.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 |
| Gross Profit | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 |
| | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 |
| | | | | | | | | | | |
| Money Available for Plan Payments | 4,980.00 | 4,980.00 | 4,980.00 | 4,980.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 |
| | | | | | | | | | | |
| Plan Payments | | | | | | | | | | |
| Class Chemical Bank | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 | 1,826.36 |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 |
| Class Roy Littlegood | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 |
| Class Wayne County | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Plan Payments | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 | 3,674.78 |
| Cash Flow | | | | | | | | | | |
| Monthly Cash Flow | 1,305.22 | 1,305.22 | 1,305.22 | 1,305.22 | 1,705.22 | 1,705.22 | 1,705.22 | 1,705.22 | 1,705.22 | 1,705.22 | 1,705.22 |
| Financing/Sale | | | | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 32,161.24 | 33,466.46 | 34,771.68 | 36,076.90 | 37,782.12 | 39,487.34 | 41,192.56 | 42,897.78 | 44,603.00 | 46,308.22 | 48,013.44 |

| Patio Market, Inc. | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 | 65 | 66 | 67 |
| INCOME | | | | | | | | | | | |
| Sales & Commissions | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 |
| Less Cost of Goods | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 |
| Gross Profit | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 |
| | | | | | | | | | | | |
| EXPENSES | | | | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 |
| | | | | | | | | | | | |
| Money Available for Plan Payments | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 |
| | | | | | | | | | | | |
| Plan Payments | | | | | | | | | | | |
| Class Chemical Bank | 1,826.36 | 1,826.36 | 1,826.36 | 193,427.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 |
| Class Roy Littlegood | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 |
| Class Wayne County | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Plan Payments | 3,674.78 | 3,674.78 | 3,674.78 | 195,276.09 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 |
| Cash Flow | | | | | | | | | | | |
| Monthly Cash Flow | 1,705.22 | 1,705.22 | 1,705.22 | -189,896.09 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 |
| Financing/Sale | | | | 193,427.67 | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 49,718.66 | 51,423.88 | 53,129.10 | 56,660.68 | 60,192.26 | 63,723.84 | 67,255.42 | 70,787.00 | 74,318.58 | 77,850.16 | 81,381.74 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

| Patio Market, Inc. | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 68 | 69 | 70 | 71 | 72 | 73 | 74 | 75 | 76 | 77 | 78 |
| **INCOME** | | | | | | | | | | | |
| Sales & Commissions | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 |
| Less Cost of Goods | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 |
| Gross Profit | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 |
| | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 |
| | | | | | | | | | | | |
| Money Available for Plan Payments | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 |
| | | | | | | | | | | | |
| Plan Payments | | | | | | | | | | | |
| Class Chemical Bank | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 |
| Class Roy Littlegood | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 |
| Class Wayne County | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Plan Payments | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 |
| Cash Flow | | | | | | | | | | | |
| Monthly Cash Flow | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 |
| Financing/Sale | | | | | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 84,913.32 | 88,444.90 | 91,976.48 | 95,508.06 | 99,039.64 | 102,571.22 | 106,102.80 | 109,634.38 | 113,165.96 | 116,697.54 | 120,229.12 |

| Patio Market, Inc. | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | 79 | 80 | 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 | 89 |
| INCOME | | | | | | | | | | | |
| Sales & Commissions | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 |
| Less Cost of Goods | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 |
| Gross Profit | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 |
| | | | | | | | | | | | |
| EXPENSES | | | | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 |
| | | | | | | | | | | | |
| Money Available for Plan Payments | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 |
| | | | | | | | | | | | |
| Plan Payments | | | | | | | | | | | |
| Class Chemical Bank | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 |
| Class Roy Littlegood | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 |
| Class Wayne County | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Plan Payments | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 |
| Cash Flow | | | | | | | | | | | |
| Monthly Cash Flow | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 |
| Financing/Sale | | | | | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 123,760.70 | 127,292.28 | 130,823.86 | 134,355.44 | 137,887.02 | 141,418.60 | 144,950.18 | 148,481.76 | 152,013.34 | 155,544.92 | 159,076.50 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

| Patio Market, Inc. | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | 90 | 91 | 92 | 93 | 94 | 95 | 96 | | | | |
| INCOME | | | | | | | | | | | |
| Sales & Commissions | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | 77,000.00 | | | | |
| Less Cost of Goods | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | 62,800.00 | | | | |
| Gross Profit | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | 14,200.00 | | | | |
| | | | | | | | | | | | |
| EXPENSES | | | | | | | | | | | |
| Bookkeeping | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | 90.00 | | | | |
| Bank & CC Charges | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | | | | |
| Insurance | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | 560.00 | | | | |
| Licenses | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | | | | |
| Alarm | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | | | | |
| Postage | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | | | | |
| Repairs | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | | | | |
| Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | | | | |
| Telephone | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | | | | |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | | | | |
| Salaries | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | 3,665.00 | | | | |
| Real Estate Taxes | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | 840.00 | | | | |
| Personal Property Tax | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | | | | |
| Total Operating Exp | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | 8,820.00 | | | | |
| | | | | | | | | | | | |
| Money Available for Plan Payments | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | 5,380.00 | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| Plan Payments | | | | | | | | | | | |
| Class Chemical Bank | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| Class General Unsecureds | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | 54.71 | | | | |
| Class Roy Littlegood | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| Group State of Michigan | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | 1,793.71 | | | | |
| Class Wayne County | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| Total Plan Payments | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | 1,848.42 | | | | |
| Cash Flow | | | | | | | | | | | |
| Monthly Cash Flow | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | 3,531.58 | | | | |
| Financing/Sale | | | | | | | | | | | |
| Cash Position after Payment of Plan Payments, assuming starting cash position of $10,000 | 162,608.08 | 166,139.66 | 169,671.24 | 173,202.82 | 176,734.40 | 180,265.98 | 183,797.56 | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |